WILLIAM WOODROW OWENS v. HARNETT TRANSFER, INC.

No. 7811DC828

(Filed 7 August 1979)

**1. Contracts §§ 18, 27.2— modification of contract by action—jury question—no breach shown as matter of law**

    In an action to recover for breach of a contract for the sale of a tractor, the trial court did not err in denying defendant's motions for directed verdict and judgment n.o.v. where defendant claimed that plaintiff breached the contract by ceasing to drive the tractor after a certain date and by allowing payments on the tractor to become two months in arrears, since there was evidence from which the jury could find that the contract was so modified by the parties' actions—defendant's acquiescence in allowing plaintiff's son to drive the tractor in his place, and defendant's failure after five consecutive

months to withhold the monthly payment for the tractor from what was owed plaintiff for freight charges — that plaintiff's performance did not constitute a breach of the contract.

**2. Rules of Civil Procedure § 51.1; Trial § 33 — jury instructions — failure to apply law to specific facts**

The trial court's instructions were inadequate where they failed to give the jury a clear mandate as to what facts, for which there was support in the evidence, it would have to find in order to answer the issues. G.S. 1A-1, Rule 51.

APPEAL by defendant from *Pridgen, Judge.* Judgment entered 10 April 1978 in District Court, HARNETT County. Heard in the Court of Appeals 29 May 1979.

This is an appeal by defendant from a judgment awarding plaintiff $5,204.44 entered after a jury trial upon plaintiff's claim for breach of contract of sale of a tractor. Plaintiff filed his complaint on 14 February 1977 and filed an amended complaint on 14 June 1977 alleging that plaintiff and defendant on 5 July 1976 entered into a contract in which the defendant agreed to deliver to the plaintiff a 1967 Ford tractor upon payment by plaintiff of $600.00 a month for nine consecutive months beginning in July 1976 for a total of $5,400.00.

In the contract, attached to plaintiff's complaint as Exhibit "A", plaintiff agreed to operate the tractor in conjunction with defendant's business for 70% of the freight, as collected, less brokerage. Plaintiff agreed that 8% of his share might be retained by defendant as a repair fund and also agreed to maintain the tractor "in its present condition, ordinary wear and tear excepted." The defendant agreed to advance necessary trip expenses and to furnish, maintain, and pay fuel costs for the operation of a trailer with an attached refrigeration unit. The contract further provided:

11. The Operator acknowledges receipt of the above referred to tractor and agrees to work under the terms of this agreement until any indebtedness to the Corporation is fully paid and/or for a period of one (1) year, whichever is longer.

12. The Operator agrees that should he fail or refuse to comply with any of the terms of this agreement, any pay-

ments made to the Corporation will be considered and applied as liquidated damages for such failure and/or refusal. Any sums owed by Harnett Transfer, Inc. to the Operator at the time of said failure or refusal to comply with the terms of this agreement shall be forfeited as liquidated damages. In addition, upon such failure or refusal, the Corporation shall have the right to immediate possession of all equipment covered by the terms of this agreement.

Plaintiff alleged that defendant breached the contract of 5 July 1976 by orally prohibiting plaintiff from occupying and operating the tractor on 6 February 1977 and by withholding $3,567.35 from the funds to which plaintiff was entitled. Plaintiff alleged that he performed all of the terms and conditions of the contract and had made total contract payments on the tractor of $3,000.00. Plaintiff in his amended complaint sought (1) $5,400.00 representing the value of the tractor, (2) $1,167.35 representing sums allegedly owed by defendant to plaintiff, and (3) $2,000.00 representing the reasonable value of loss of use.

In its answer filed 21 November 1977, defendant admitted the contract but denied plaintiff's allegations of breach by defendant. The defendant further counterclaimed for $11,500.00 alleging that the plaintiff had failed to operate the vehicle in accordance with the terms of the contract with result that defendant suffered severe losses of business revenues and defendant's vehicle insurance was made much more difficult and expensive to obtain.

At trial the plaintiff presented evidence to show: He started driving a truck for the defendant in February 1976 and took possession of the 1967 Ford tractor as a result of the 5 July 1976 contract. The defendant did not give plaintiff title to the tractor. Plaintiff drove the tractor about 75,000 miles and pulled defendant's trailers anywhere from Florida to Boston, hauling mostly eggs, frozen bread, and office furniture. The plaintiff kept the tractor in good running condition and made numerous repairs to it.

The defendant deducted a $600 payment each month from plaintiff's 70% share of the freight charges in July, August, September, October, and November of 1976. The defendant did not deduct a payment in either December 1976 or January 1977.

Although the contract did not require that the payments be deducted, the parties had an understanding at the time the contract was made that this would be done. The defendant withheld $1,367.30 from plaintiff's share for the repair fund, but the fund was never used to repair the tractor. The plaintiff paid for repairs out of his advances, and the defendant took the amount so spent out of plaintiff's settlement at the end of the month.

Plaintiff stopped working for defendant on 18 October 1976. Plaintiff told defendant's president George Hodges that plaintiff's son John Owens was going to "take it over." Defendant's president did not say too much at first, but after a while he said, "OK", that he would let the son try it and see how he did. John Owens then drove the tractor from 19 October 1976 through 6 February 1977. During this period defendant's president advanced John Owens money to buy gas and told him where to go and what to haul.

On 6 February 1977 the defendant's president, over plaintiff's protests, had the tires removed from the tractor and told plaintiff he was fired.

The defendant presented evidence to show: Mr. Hodges did not consent "100 percent" to John Owens driving the vehicle in place of his father. On 18 October 1976 the truck was loaded with eggs and the defendant did not have another driver available. The only alternative available was to allow John Owens to drive it. Thereafter, Mr. Hodges repeatedly talked with the plaintiff about returning to drive the vehicle. Finally, in January 1977, Hodges told the plaintiff that the vehicle had to have him on it, or they were going to have to quit running it. The insurance company specifically told defendant not to let John Owens drive the tractor anymore. The plaintiff did not return.

The December 1976 and January 1977 payments were never made. On one occasion after the December 1976 payment became due, the plaintiff asked Hodges to take the payment out of the money coming from driving the tractor. Hodges told the plaintiff that there was no money to take it out of. The defendant took the tractor back after no payments had been made for two months.

Defendant sold the tractor in February 1977. It was not worth fixing and trying to get someone to operate it. Defendant

did not return to plaintiff the repair fund or the $3,000 plaintiff had paid on the truck. "He did not have any coming back."

The trial court submitted issues to the jury which answered them as follows:

1. Did the defendant, Harnett Transfer, Inc., knowingly prevent or hinder William W. Owens' performance of his contract?

ANSWER: Yes

2. If the defendant, Harnett Transfer, Inc., did prevent or hinder the plaintiff's performance of the contract, was the defendant's, Harnett Transfer, Inc., conduct justified?

ANSWER: No

3. Did the defendant, Harnett Transfer, Inc., breach the contract dated July 5, 1976 by a violation or nonfulfillment of the obligations, agreements or duties imposed by the contract?

ANSWER: Yes

4. Did the plaintiff, William Woodrow Owens, breach the contract dated July 5, 1976 by a violation or nonfulfillment of the obligation, agreements or duties imposed by the contract?

ANSWER: No

5. What amount of damages has the plaintiff, William Woodrow Owens, sustained?

ANSWER: $5,204.44

From judgment entered upon the jury verdict defendant appeals.

*Bryan, Jones, Johnson & Greene by K. Edward Greene for the plaintiff appellee.*

*Johnson & Johnson by Sandra L. Johnson for the defendant appellant.*

PARKER, Judge.

[1] The defendant first assigns error to the trial court's denial of its motion for a directed verdict and judgment notwithstanding

the verdict. Defendant contends that the evidence shows as a matter of law that plaintiff breached the contract by ceasing to drive the tractor after 18 October 1976 and by allowing the payments on the tractor to become two months in arrears, thus establishing defendant's right to repossess the vehicle on 6 February 1977 pursuant to the terms of the contract. We do not agree.

First we note that the transaction that is the subject of this action was a sale of goods within the purview of G.S. Chap. 25, Article 2. G.S. 25-2-102. In essence, the transaction was a sale of the tractor in consideration of payments of money and delivery of haulage services by the plaintiff.

From the evidence presented the jury could find that for approximately three and one half months the defendant acquiesced in the substitution of plaintiff's son for plaintiff as driver of the vehicle after plaintiff announced to defendant's president his intention to go out and get another job. This acquiescence by defendant, if found by the jury, constitutes waiver of the agreement in the contract which provided that the plaintiff would operate the tractor in conjunction with defendant's business. G.S. 25-2-208(3).

> A waiver is sometimes defined to be an intentional relinquishment of a known right. The act must be voluntary and must indicate an intention or election to dispense with something of value or to forego some advantage which the party waiving it might at his option have insisted upon. The waiver of an agreement or of a stipulation or condition in a contract may be expressed or may arise from the acts and conduct of the party which would naturally and properly give rise to an inference that the party intended to waive the agreement. Where a person with full knowledge of all the essential facts dispenses with the performance of something which he has the right to exact, he therefore waives his rights to later insist upon a performance. A person may expressly dispense with the right by a declaration to that effect, or he may do so with the same result by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right.

*Guerry v. Trust Co.*, 234 N.C. 644, 648, 68 S.E. 2d 272, 275 (1951).

Should the jury find that defendant accepted the substitution of plaintiff's son for plaintiff as driver, the defendant could not now successfully assert that the substitution constituted a breach of the contract. This is so even though this was a personal contract. "Parties can be substituted in a personal contract when (1) the parties do not object, and (2) fully acquiesce in accepting the services performed by the substituted party." *Rape v. Lyerly*, 23 N.C. App. 241, 249, 208 S.E. 2d 712, 716-17 (1974), *aff'd*, 287 N.C. 601, 215 S.E. 2d 737 (1975).

Nor does the evidence establish conclusively that the plaintiff breached the contract by failing to make a $600.00 payment in either December 1976 or January 1977. The evidence shows that by mutual understanding of the parties from the contract's inception in July 1976 the defendant obtained each monthly $600.00 payment by taking out the payments from plaintiff's 70% share of the freight charges when settlement was made at month's end. This was done by defendant, the evidence shows, even though plaintiff's account always was in deficit. In December, 1976 and January, 1977 the defendant stopped withholding payments even though it continued in these months to make settlements with plaintiff. There is no evidence to show that defendant ever notified plaintiff that it was demanding a change in the method of payment.

It is true that the contract does not expressly require the defendant to obtain payment by wihholding a portion of plaintiff's share. However, after the defendant had obtained payment in this way for five consecutive months, the plaintiff thereafter had a right to rely on the construction defendant had placed upon the contract and assume that the manner of payment had been established. G.S. 25-2-208(1) provides:

(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

In summary, on the directed verdict issue there was evidence from which the jury could find that the contract was so modified by the parties' actions that plaintiff's performance did not con-

stitute a breach of the contract. If plaintiff did not breach the contract, then defendant's repossession of the tractor on 6 February 1977 was a breach of the contract. Defendant's motion for a directed verdict was correctly denied.

[2] The defendant next assigns error to the trial court's charge to the jury on issue number four. We find error and reverse.

The challenged instruction reads:

Issue No 4 reads: Did the Plaintiff, William Woodrow Owens, breach the contract dated July 5, 1976 by a violation or nonfulfillment of the obligations, agreements, or duties imposed by the contract? Again, the Court instructs you on the burden of proof, and on this Issue, the burden of Proof, on this Defendant, Harnett Transfer, Inc., to satisfy you, by the greater weight of the evidence, that the contract was breached by the Plaintiff, William W. Owens. A breach of contract, as previously instructed, is the unjustified failure to perform any promise, expressed or implied, that is a part of the contract. A breach occurs when a party, without legal excuse, fails to perform any promise which is all or part of the contract. As to this Issue, you are instructed to recall the summary of evidence by the Court on the previously instructed on Issues. As to this Issue, I finally instruct you that if you find, by the greater weight of the evidence, that the Plaintiff, William W. Owens, without legal excuse, failed to perform any promise, which is all or part of the contract, then you will answer this Issue "yes". On the other hand, if you fail to so find, by the greater weight of the evidence, then you will answer the Issue "no."

I will instruct you as to the law concerning breach of contract by the Plaintiff and the Defendant as follows: When there is a breach of contract or some provision thereof, which does not go to the substance of the whole contract, and indicate an intention to repudiate it, the breach may be waived by the innocent party who may elect to treat the contract as still subsisting and continue performance on his part. While a party to a contract may excuse or waive nonperformance of a condition by the other party, waiver is a question of intent and does not obtain unless intended by the one party and so understood by the other. Further, the provisions of a written

contract may be modified, waived or abandoned by a subsequent parol agreement. Such modification or waiver may be by subsequent parol agreement or by conduct which naturally and justly leads the other party to believe that the provisions had been modified or waived. The burden of proving modification or waiver is on the party asserting it, and conduct which will operate as a modification or abandonment must be positive, unequivocal and inconsistent with the terms of the contract.

This instruction is inadequate. In no part of the charge did the court give the jury a clear mandate as to what facts, for which there was support in the evidence, it would have to find in order to answer the issue either in the affirmative or in the negative. As our Supreme Court has said, Justice Moore speaking for the Court:

G.S. § 1-180, as now incorporated in G.S. § 1A-1, Rule 51, required the judge to explain and apply the law to the specific facts pertinent to the issue involved. A mere declaration of the law in general terms was not sufficient to meet the requirements of the statute. *Saunders v. Warren*, 267 N.C. 735, 149 S.E. 2d 19 (1966). It is the duty of the court, without a request for special instructions, to explain the law and to apply it to the evidence on all substantial features of the case. *Melton v. Crotts*, 257 N.C. 121, 125 S.E. 2d 396 (1962). A failure to do so constitutes prejudicial error for which the aggrieved party is entitled to a new trial. *Correll v. Gaskins*, 263 N.C. 212, 139 S.E. 2d 202 (1964).

*Investment Properties v. Norburn*, 281 N.C. 191, 197, 188 S.E. 2d 342, 346 (1972).

The plaintiff-appellee contends that the court's error was in any event nonprejudicial because the answers given by the jury to issues number one and two provide the answer to issue number four also, making that issue and the instruction on it mere surplusage. We disagree. First, we note that an examination of the instructions on the first two issues reveals that they suffer from the same infirmity as the instruction on the fourth issue. Second, and more directly in answer to plaintiff-appellee's argument here, in the final analysis the first two issues do not provide

a satisfactory frame for posing to the jury the questions which the finder of fact in this action is called upon to determine.

This points up a question upon which we will comment, looking ahead toward the new trial of this action. The five issues submitted by the trial court do not as a whole satisfactorily frame the issues in this action. The evidence is uncontroverted that plaintiff failed to comply with some terms of the 5 July 1976 agreement and that defendant repossessed the tractor on 6 February 1977. The only issue for determination by the finder of fact is whether the contract was so modified by the actions of the parties that plaintiff's action in substituting his son as driver and his inaction in failing to tender the $600.00 payment in December 1976 and January 1977 did constitute a breach of the contract. The jury's repeated requests for re-instruction on the issue of waiver and modification shows that the jury was confused by the manner in which the issues were framed. In the new trial of the action, the trial court should simplify the issues in order that the question to be answered may be posed more directly to the jury in a fashion that it will be able to understand.

New trial.

Judges MITCHELL and MARTIN (Harry C.), concur.