FRANK J. CLIFFORD, AND DOLORESE R. CLIFFORD v. RIVER BEND PLAN-TATION, INC., J. FRANK EFIRD, PRESIDENT, RIVER BEND PLANTATION, INC., AND J. FRANK EFIRD, INDIVIDUALLY AND AS PRESIDENT OF RIVER BEND, INC.

No. 813SC386

(Filed 2 February 1982)

**Damages §§ 5, 17— breach of express warranty—excessive verdict—erroneous instructions to jury**

In an action to recover for flood damage to a home purchased by plaintiffs from defendants, the jury returned a verdict in excess of the amount to which plaintiffs may have been properly entitled. The errors in the damages awarded stemmed from the court's instructions to the jury as the court failed to explain to the jury the relationship between the evidence presented at trial and the issues involved. Further, by submitting both the issue on false representation and the issue on breach of warranty to the jury, the court allowed plaintiffs to recover twice for the same damages.

APPEAL by defendants from *Cornelius, Judge.* Judgment entered 22 November 1980 in Superior Court, CRAVEN County. Heard in the Court of Appeals 19 November 1981.

This is an action in which plaintiff homebuyers sought to recover damages from defendant seller for breach of express warranties, fraud, breach of repurchase agreement, and unfair and deceptive trade practices.

In their complaint plaintiffs alleged that they agreed to purchase for $40,000 a house and lot located at 220 Rockledge Road in River Bend Plantation in New Bern; that the property was owned by defendant; and that plaintiffs entered into this agreement based upon representations from defendant's salesman, Philip Nelson, and defendant's president, J. Frank Efird, that the property was not subject to flooding, that it carried a full one-year warranty, and that defendant would execute a buy-back agreement to repurchase the house after one year if plaintiffs were dissatisfied.

In plaintiffs' first claim for relief, they alleged that the property had flooded. They sought to recover damages to their personal property, damages for personal injury to Mr. Clifford, and damages for repairs and extensive landscaping to the real estate. They alleged they were entitled to damages because defendant had breached the express warranty that the property was free from flooding. In their second claim for relief, plaintiffs sought actual and punitive damages based on defendant's alleged fraudulent representations concerning the flooding problems. In their third claim for relief, plaintiffs sought damages for breach of a one-year warranty on the home for workmanship, alleging that defendant refused to make repairs to the attic and roof. In their fourth claim for relief, plaintiffs sought damages on grounds that defendant had breached the buy-back agreement; and in their fifth claim for relief, they alleged that they were entitled to treble damages for unfair and deceptive trade practices by defendant.

Defendant filed an answer and amended answer denying the material allegations of the complaint and asserting numerous defenses including failure by plaintiffs to perform various provisions of the repurchase agreement.

PLAINTIFFS' EVIDENCE

Stipulations and testimony from plaintiff Frank Clifford tend-
ed to show that in March of 1976 Philip Nelson, a real estate
salesman for defendant, showed plaintiffs the house which is the
subject of this action and which was built by defendant. Upon in-
spection of the house, Clifford noticed a wash area in the
backyard. Nelson indicated that this had been caused by settling
of the septic system. Clifford also noticed some dampness under
the house and asked if the property flooded. Nelson responded
that it did not. Clifford also inquired about the appearance of the
roof, but Nelson assured him any problem would be taken care of
when the weather was warmer. Nelson stated that the house was
warranted for one year against structural defects and that there
would be a buy-back agreement which would enable plaintiffs to
obtain a full refund at the end of one year if they were dissatis-
fied with the house. Clifford later met with J. Frank Efird, Presi-
dent of defendant corporation, and was told by Efird that there
was no flooding problem on the property. The offer to purchase
signed by Clifford on 19 March 1980 stated that there would be a
buy-back agreement between the parties. The offer to purchase
contained no express warranties and stated that it contained the
entire agreement between the parties. Clifford testified that he
would not have decided to purchase the house but for Nelson and
Efird's representations that the house was not subject to flooding,
that there would be a buy-back agreement and Nelson's
assurances of a one-year warranty.

The closing for the sale of the house occurred on 29 April
1976. Plaintiffs paid cash for the house. Plaintiffs refused to sign
the buy-back agreement prepared by defendant because it re-
quired them to have an eighty-percent assumable loan on the
property before defendant would repurchase the house. At Clif-
ford's insistence that he had understood no mortgage was to be
involved, an additional paragraph was added to the agreement,
which reads as follows:

"8. River Bend Plantation, Inc. agrees to allow full
$40,000, purchase price against purchase of any house owned
and for sale by River Bend Plantation, Inc., or J. Frank Efird
at any time. Subject to temporary financing being available
at no cost to other than River Bend Plantation, Inc."

Clifford signed the revised buy-back agreement, with the understanding that he did not have to have an assumable mortgage to trade his house back to defendant.

On 30 May 1976 Clifford moved into the house. On 1 June 1976 it began to rain and continued for several days, leaving five to six inches of water in the garage and over a foot of water underneath the house. In Clifford's opinion the personal property that was stored in the garage and was destroyed by the flooding had an estimated value of $4,000. After plaintiffs gave Efird a list of their damaged property, he took some corrective action to prevent further flooding, but the property has continued to flood. The plaintiffs spent around $1,000 for reseeding, replacing shrubbery, installing gutters, downspouts and run-off lines.

In April of 1977 plaintiffs attempted to exercise the buy-back agreement by trading their house for a condominium. This offer was rejected by defendant because plaintiffs did not have an assumable mortgage. Plaintiffs have not tried to sell their house due to the flooding and roof problems. Clifford presented evidence that he suffered muscular-skeletal injury and pain as a result of removing boxes from his garage after the June flood.

The previous owner of the house, Patricia Swendel, testified that the yard had flooded up to her knees when she lived in the house and that she had complained to Efird about it. Philip Nelson, the realtor involved, stated that he had shown the house to Clifford but did not recall Clifford asking about flooding or drainage problems. Nelson testified that it was his understanding the price of the house was reduced from $43,000 to $40,000 because it was sold "as is" with no warranties to plaintiffs. Nelson stated that he did not know until Efird testified in court that Clifford had a full one-year warranty on the house.

Durwood Andrews, a carpentry foreman, inspected the house and estimated it would cost $6,600 to repair the roof. Alex Kelly, an engineer with the State Highway Division, testified there were drainage problems that would have required correction before the State would have accepted the road in front of plaintiffs' house. An expert real estate appraiser who had not personally inspected the house testified that a house with defects such as those of plaintiffs' residence would have a depreciated market value.

Defendant's motion for a directed verdict was granted as to plaintiffs' claim for unfair and deceptive trade practices and punitive damages. The motion was denied as to all other claims.

### DEFENDANT'S EVIDENCE

Defendant's evidence tended to show that Efird's reputation in the community was good and that the road work done in River Bend met minimum State standards. Efird testified that he had never told Clifford the lot was not subject to flooding. After the heavy rainfall of June 1976, he took corrective measures on plaintiffs' property, although he felt this was beyond the provisions of the one-year warranty. Efird stated that he was willing to comply with the buy-back agreement if plaintiffs performed the necessary conditions. Defendant's renewed motion for a directed verdict was denied.

The following eleven issues were submitted to the jury and answered as indicated:

"1. Did the Defendant, River Bend Plantation, Inc., J. Frank Efird, President, warrant to Plaintiff, Frank J. Clifford and Delorese R. Clifford, that the property at 220 Rockledge Road, River Bend Plantation, was not subject to flooding?

ANSWER: Yes.

2. Was the warranty breached by the property at 220 Rockledge Road being subject to flooding?

ANSWER: Yes.

3. What amount of damages have Plaintiff, Frank J. Clifford and Delorese Clifford sustained?

ANSWER: $7,475.00.

4. Did the Defendant, River Bend Plantation, Inc., J. Frank Efird, President, warrant to Plaintiff Frank J. Clifford and Delorese R. Clifford, that the house situated at 220 Rockledge Road, River Bend Plantation carried a one year warranty concerning workmanlike quality?

ANSWER: Yes.

5. Was the warranty breached by the house at 220 Rockledge Road not being of workmanlike quality during the one year period?

ANSWER: Yes.

6. What amount of damages have Plaintiff Frank J. Clifford and Delorese R. Clifford sustained?

ANSWER: $6,600.00.

7. Did the Defendant, River Bend Plantation, Inc., J. Frank Efird, President, make a false representation with the intent it should be acted upon that the property at 220 Rockledge Road, River Bend Plantation was not subject to flooding; and did the Plaintiffs Frank J. Clifford and Delorese R. Clifford, act upon the representation and suffer damages to their reliance upon the false representation?

ANSWER: Yes.

8. What amount of damages, if any, have Plaintiffs Frank J. Clifford and Delorese R. Clifford sustained?

ANSWER: 40,000.00.

9. Did the Defendant, River Bend Plantation, Inc., J. Frank Efird, President, agree to repurchase the property known as house and Lot #10-E located at 220 Rockledge Road, River Bend Plantation from the Plaintiff, Frank J. Clifford and Delorese R. Clifford after one year or to allow full $40,000 purchase price against purchase of any house owned and for sale by River Bend Plantation, Inc., or J. Frank Efird at any time?

ANSWER: Yes.

10. Did the Defendant, River Bend Plantation, Inc., J. Frank Efird, President breach the agreement to repurchase the property?

ANSWER: Yes.

11. What amount of damages, if any, have the plaintiffs Frank J. Clifford and Delorese R. Clifford sustained?

ANSWER: $46,000.00."

In order to clarify the jury's verdict, the court submitted the following supplemental issues:

"1. Are the damages awarded in response to issue #8 separate and apart from the damages awarded in response to any other issue?

ANSWER: Yes.

2. Are the damages awarded in response to issue #11 separate and apart from the damages awarded in response to any other issue?

ANSWER: Yes.

3. Do you mean by your verdict that plaintiffs are entitled to recover from defendant the total sum of $100,075 and do you mean that in answer to the 8th issue that $40,000 represents the difference between the market value of the property at the time of sale and the market value had its value been what it was represented to be?

ANSWER: Yes.

4. Did the jury intend by the answer to the 11th issue that the plaintiff was to receive a sum payment of $46,000 and be allowed to keep the residence at 220 Rockledge Road or was it the intent and verdict of the jury that the defendant repurchase the residence at 220 Rockledge Road for $46,000 or in the alternative to allow the plaintiff a credit of $46,000 against purchase of other property owned by River Bend, the defendant?

ANSWER: Yes."

Judgment was entered for plaintiffs in the amount of $100,075, which was the total of all damages specified in the jury's responses to the original issues.

*Perdue & Voerman by David P. Voerman for plaintiff appellees.*

*White, Allen, Hooten, Hodges & Hines by John M. Martin; and Jeffress, Morris, Rochelle & Duke by A. H. Jeffress for defendant appellants.*

CLARK, Judge.

The trial court treated the plaintiff with undue munificence. The judgment based on the jury verdict awarded the plaintiffs $100,075, and they still have the house and lot for which they paid $40,000 in April 1976. The recovery did not include punitive damages. Plaintiffs did not appeal from the directed verdict for defendants on the claim for unfair and deceptive trade practices and for punitive damages.

The jury verdict included $7,475 on the breach of warranty claim (Issues 1, 2 and 3), for which the measure of damages, according to jury instructions, was the difference between the actual market value of the property and the market value of the property as warranted; also included was $40,000 on the fraud claim (Issues 7 and 8), for which the measure of damages, according to jury instructions, was the difference between the actual market value of the property and the market value of the property as falsely represented. The warranty and the false representation was the same—that the property was not subject to flooding. And the measure of damages for both claims was the same—the difference between the actual market value of the property and the market value if the property had not been subject to flooding. The jury verdict on these two claims, though inconsistent as to amount, awarded plaintiffs a double recovery. Then, after the awards of damages on these two claims and after an award of $6,600 on the breach of warranty for workmanlike quality claim (Issues 4, 5 and 6), for the total sum of $54,075, the jury awarded the plaintiffs an additional $46,000 on the breach of repurchase claim (Issues 9, 10, and 11). It is obvious that plaintiffs should not have recovered such damages for breach of the repurchase agreement claim after recovering $54,075 and retaining the house and lot, for which they paid only $40,000.

Much of the confusion in regard to the damages awarded undoubtedly stems from the court's instructions to the jury. The trial court failed to explain and apply the law to the evidence as required by G.S. 1A-1, Rule 51. It is the duty of the court to explain the law and apply it to the evidence presented on all substantial features of the case. The failure to do so constitutes prejudicial error for which the aggrieved party is entitled to a new trial. *Board of Transportation v. Rand*, 299 N.C. 476, 263 S.E.

2d 565 (1980); *Investment Properties v. Norburn*, 281 N.C. 191, 188 S.E. 2d 342 (1972); *Owens v. Harnett Transfer*, 42 N.C. App. 532, 257 S.E. 2d 136 (1979).

The record reveals that in the charge to the jury the trial court, after summarizing the evidence, read the eleven issues to the jury and then in instructing on each of the eleven issues stated abstract principles of law. The record is void of any instructions to the jury as to what facts, if found by them to be true, would justify answering the issues submitted to them in the affirmative or negative. At no point in the charge did the trial judge explain to the jury the relationship between the evidence presented at trial and the issues involved. This error was prejudicial to the defendant and requires a new trial.

We discuss other errors for the limited purpose of providing some guidance to the trial court on retrial.

The trial court erred in the instructions to the jury in allowing damages on both the breach of warranty and the fraud claims.

As the trial judge instructed, the measure of damages in a tort action for fraud is the same as in contract actions for breach of warranty; that is, the difference between the actual value of the property as it exists and its value if it had been as represented. A plaintiff may allege and prove alternative causes of action, but he must elect to pursue only one to judgment. 37 Am. Jur. 2d *Fraud and Deceit* § 353 (1968); D. Dobbs, *Remedies*, "Damages for Deception," § 9.2 (1973). By submitting both the issue on false representation and the issue on breach of warranty to the jury, the court allowed plaintiffs to recover twice for the same damages.

It is noted that plaintiffs alleged special damages, damages to personal property resulting from flooding. On retrial the issues relating to the breach of warranty claims or to the fraud claim, whichever they elect to pursue, should include an issue or issues relating to the personal property damage.

On the claim for breach of the repurchase agreement the jury awarded damages (Issue 11) in the sum of $46,000. There was no evidence to support this award. When the jury reached this issue it had already awarded damages that would compensate plaintiffs for any breach of warranty or false representation relative to

flooding and for breach of warranty of workmanlike quality, and thus the answer to this damage issue (Issue 11) should not include any award based on the decreased value of the property because of flooding. On retrial the burden is on the plaintiff to prove that he was damaged by the breach of the repurchase agreement and the extent of such damage.

Other assignments of error are not discussed since they may not recur upon retrial.

New trial.

Judges WHICHARD and BECTON concur.