DEEP RUN MILLING COMPANY v. BRUCE TAL WILLIAMS AND WIFE, MARY ALICE WILLIAMS

No. 828SC33

(Filed 21 December 1982)

**1. Quasi Contracts and Restitution § 2.1— implied contract—sufficiency of evidence**

The trial court properly failed to direct a verdict for the femme defendant on the issue of an implied contract concerning the delivery of hog feed by plaintiff to defendants where the evidence tended to show that the femme defendant considered the hog operation as well as the debt to plaintiff to be that of herself and her husband.

**2. Rules of Civil Procedure § 51.1— failure to review evidence in charge to jury—prejudicial error**

A trial court's failure to review any evidence and thus apply the law to the evidence was prejudicial error. G.S. 1A-1, Rule 51(a).

APPEAL by defendant from *Barefoot, Judge.* Judgment entered 1 October 1981 in Superior Court, LENOIR County. Heard in the Court of Appeals 20 October 1982.

Plaintiff, Deep Run Milling Company, instituted this action by filing a complaint to collect the balance of an account allegedly owed by the husband and wife defendants, Bruce Tal Williams and Mary Alice Williams. The defendants answered, denying the essential allegations of the complaint. The case came on for trial. After the plaintiff rested its case and at the close of all the evidence, defendant Mary Alice Williams moved for a directed verdict. These motions were denied. A directed verdict was entered against the defendant husband, Bruce Tal Williams. The jury returned a verdict in favor of the plaintiff against the defendant wife, Mary Alice Williams. Defendant Mary Alice Williams unsuccessfully moved for judgment notwithstanding the verdict and, in the alternative, a new trial. From the denial of her motions, defendant Mary Alice Williams appeals.

*White, Allen, Hooten, Hodges & Hines, P.A., by John M. Martin, for defendant appellant.*

*William F. Simpson, Jr., for plaintiff appellee.*

JOHNSON, Judge.

This is an appeal from a jury verdict against defendant Mary Alice Williams on an account due. The issues dispositive of this

appeal are whether the trial court erred in its denial of defendant's motion for a directed verdict and whether the trial court erred in its instructions to the jury.

[1] The plaintiff's theory of the case, and the issue ultimately submitted to the jury, was whether an implied contract existed between Mary Alice Williams and the plaintiff, Deep Run Milling Company.

It is well settled that a motion for directed verdict under Rule 50 of the North Carolina Rules of Civil Procedure may be granted only if the evidence is insufficient, as a matter of law, to support a verdict for the plaintiff. See *e.g., Arnold v. Sharpe*, 296 N.C. 533, 251 S.E. 2d 452 (1979); *Trust Co. v. Smith*, 44 N.C. App. 685, 262 S.E. 2d 646 (1980). In determining motions for directed verdict and for judgment notwithstanding the verdict, the Court must consider all relevant evidence admitted at trial in a light most favorable to the plaintiff with contradictions and conflicts resolved in plaintiff's favor. *Johnson v. Clay*, 38 N.C. App. 542, 248 S.E. 2d 382 (1978). A directed verdict for the defendant is not properly allowed unless it appears, as matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977).

The evidence discloses that the plaintiff and defendant Bruce Tal Williams entered into an oral contract in 1977 or 1978 whereby the plaintiff agreed to deliver hog feed to Mr. Williams and he, in turn, agreed to pay for the feed when the hogs were "topped out," weighing between 200 and 240 pounds. The defendant-wife was not present when this agreement was made. Plaintiff then began delivering feed to Mr. Williams, who began paying plaintiff for the feed as the hogs were topped out. Plaintiff's president, Norman Davis, testified that he had known Bruce and Mary Alice Williams for over 20 years.

The hog operation was started by Mr. Williams sometime in 1979. The account with plaintiff was in the name of Bruce Tal Williams only, and all delivery tickets were in his name only. At times, Mrs. Williams, as well as other family members, would call to request a feed delivery or would pick up feed from plaintiff. All deliveries were made pursuant to the initial agreement be-

tween plaintiff and Mr. Williams. The account was an ongoing transaction which began on the day the agreement was made.

On several occasions when Norman Davis delivered feed, Mrs. Williams was the only one home. When payments began slowing down, Davis went to the house to see Mr. Williams. Davis began to believe that some hogs had reached the specified weight and been sold, but without his having received payment for the feed as agreed.

On direct examination, plaintiff's president stated,

I went to their home and talked with Mrs. Williams several times about it. She said: "We are going to pay you," and "I do not know just when we can." I told her I needed my money, and she stated that she did not know when I would be paid, but that they were going to pay me.

Davis had several more conversations with each of the Williams separately about the debt.

On cross-examination Davis stated,

I did not have any contact with Mrs. Williams concerning the account until Mr. Williams got behind in his payment. I went to their home and Mr. Williams was not there. I talked with Mrs. Williams about the account and she stated that they were going to pay me but did not know when.

Defendant Mary Alice Williams testified that the hog operation was located on land in which her mother owned a life estate. The Williams' home was also located upon this property. Mrs. Williams would take a life estate in the property upon the death of her mother. Both Mr. and Mrs. Williams were regularly employed at jobs outside the home. The hog operation and the hogs belonged to her husband. Mrs. Williams testified further that when her husband was unable to get to the mill in time to order feed she would do so, and she would occasionally help him with the hogs when he was ill. Mr. Williams had been ill often during the past few years. Mrs. Williams denied making any statements to Norman Davis, or anyone at Deep Run Milling Company to show that she would be responsible for her husband's account.

On cross-examination Mrs. Williams stated,

One time we took some hogs to my mother's house to feed separately and then to kill for my mother and my aunt. My mother and my aunt had planned to pay us for the hogs when they were killed and we would then take the money to Norman (Davis). Norman did not agree. That is when Norman missed the hogs. Instead of killing them, we decided that the best thing to do was to sell them, and we gave the check to Norman.

The evidence shows that the account was expressly created by defendant Bruce Tal Williams and plaintiff. The account was in Mr. Williams' name only. As no express agreement regarding the account existed between Mrs. Williams and plaintiff, an implied contract between these parties could exist. *Concrete Co. v. Lumber Co.*, 256 N.C. 709, 124 S.E. 2d 905 (1962), and *Bryson v. Hutton*, 41 N.C. App. 575, 255 S.E. 2d 258 (1979), cited by defendant in support of her argument, are inapplicable. Mrs. Williams is not chargeable with an implied contract simply because she received the goods, but rather, by virtue of her own actions and representations to plaintiff's president.

While conflicts exist in the evidence, these must be resolved in the plaintiff's favor in passing upon a motion for directed verdict. *Johnson v. Clay, supra.*

It is reasonable to infer from the testimony set forth above that Mrs. Williams' action in taking some hogs to her mother and her use of the word "we" when referring to that act, and in her conversations with Norman Davis, indicate that she considered the hog operation as well as the debt to plaintiff to be that of herself and her husband. The evidence was, therefore, sufficient to support a jury verdict for plaintiff on the issue of implied contract. The trial court correctly denied defendant's motion for directed verdict.

[2] Defendant next assigns error to the trial court's failure to review the evidence in its charge to the jury. We find error and reverse.

At no point in its charge to the jury did the trial court review the evidence presented. In fact, the court instructed the jury as follows:

I have not reviewed the evidence in this case but you will recall the evidence as it was presented to you during the trial. It is your duty to recall the evidence as it was presented to you.

It is indeed the duty of the jury to recall the evidence presented. However, it is also the duty of the trial court to explain the law and apply it to the evidence presented. G.S. 1A-1, Rule 51(a).

The trial judge is required to declare and explain the law arising on the evidence given in the case. G.S. 1A-1, Rule 51(a) . . . This rule is a continuation of the requirement contained in former G.S. 1-180 . . . As such, it creates a substantial legal right in the parties . . . and vests in trial courts the duty, without a request for special instruction, to explain the law and apply it to the evidence on all substantial features of the case . . . A failure to do so constitutes prejudicial error for which the aggrieved party is entitled to a new trial. (Citations omitted.)

*Board of Transportation v. Rand*, 299 N.C. 476, 483, 263 S.E. 2d 565, 570 (1980). In order for the trial court to discharge its duty under Rule 51 the court must "give the jury a clear mandate as to what facts, for which there was support in the evidence, it would have to find in order to answer the issue either in the affirmative or in the negative." *Owens v. Harnett Transfer*, 42 N.C. App. 532, 540, 257 S.E. 2d 136, 141 (1979).

The trial court's failure to review any evidence and thus apply the law to the evidence is prejudicial error.

New trial.

Judges ARNOLD and HILL concur.