**K–B TRUCKING COMPANY and Keith Collins, Plaintiffs-Appellees, Cross-Appellants,**

**v.**

**RISS INTERNATIONAL CORPORA-TION and World Leasing, Inc., Defendants-Appellants, Cross-Appellees.**

Nos. 81–2440, 81–2498.

United States Court of Appeals, Tenth Circuit.

May 28, 1985.

J. Nick Badgerow of McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., for defendants-appellants, cross-appellees.

Edward A. McConwell, Overland Park, Kan., for plaintiffs-appellees, cross-appellants.

Before HOLLOWAY, Chief Judge, and BARRETT and MILLER,[*] Circuit Judges.

HOLLOWAY, Chief Judge.

In this diversity action, the jury awarded plaintiffs Keith Collins and K–B Trucking Co. ("K–B") actual and punitive damages on their fraudulent misrepresentation claims against defendants Riss International Corp. ("Riss") and World Leasing, Inc. ("World Leasing"). Defendants argue on appeal that (1) Collins was not a proper plaintiff; (2) certain documentary evidence was erroneously admitted; (3) there was insufficient evidence of fraud; and (4) there was insufficient proof of damages. Plaintiffs in their cross-appeal contend that the district court erred in granting defendants' motion for directed verdicts on plaintiffs' breach of warranty and conversion claims. We affirm in part and vacate in part, and remand.

## I

### Facts

In July 1978, Midway Trucking Co. ("Midway") was on the verge of financial collapse. Midway was owned by Billy Moberly and performed local cartage for the Kansas City Terminal of defendant Riss. Later that month, plaintiff Keith Collins and Moberly met with officials of Riss and defendant World Leasing to discuss the award of Riss's local cartage contract and the purchase of tractors from World Leasing. Certain alleged representations made by defendants' representatives to Collins at this meeting concerning the rates, gross income and profitability of the cartage operation, and the cost and quality of the tractors, form the basis of this action by Collins and K–B, the company he formed allegedly on the basis of these representations.

K–B was incorporated on August 2, 1978. Soon thereafter, K–B leased certain tractors from World Leasing with an option to purchase and contracted with Riss to provide local cartage service. On August 14, K–B entered into nine separate lease-purchase agreements with World Leasing. Defendants' Exhibits L through T, V R. 673–752. The optional purchase price of the seven 1973 tractors was $13,000 each, and the optional purchase price of the two 1972 tractors was $11,700 each. On August 14, K–B and Riss also entered into a written cartage agreement. An appendix to the agreement contained a schedule of rates by which K–B would be compensated for performing certain services. Defendants' Exhibit A, V R. 646–49. The contract provided that it would be in effect for one year and that it could be cancelled by either party upon notice.

K–B went out of business less than eight months after its incorporation. On January 16, 1979, Riss informed K–B that it was terminating the cartage contract. Also on January 16, World Leasing picked up its tractors from K–B. K–B ceased operations in March 1979.

K–B brought this action against Riss and World Leasing alleging violation of the antitrust laws, fraud, breach of contract, breach of implied warranty, and conversion.[1] I R. 1–10. World Leasing counterclaimed for breach of contract. *Id.* at 33 (Pretrial Order). At the beginning of trial, Keith Collins was added as a plaintiff. I R. Supp. 1. At the close of plaintiffs' evidence, the district court granted defendants' motion for directed verdicts on the antitrust, breach of warranty and conversion claims, and granted defendants' motion to strike evidence of lost profits. The court denied defendants' motion for directed verdicts on the fraud and breach of contract claims and denied defendants' motion to strike Keith Collins as a plaintiff. At the close of evidence, the court denied defendants' motion for directed verdicts on the fraud and breach of contract claims and denied plaintiffs' motion for a directed verdict on World Leasing's counterclaim.

---

[*] The Honorable Jack R. Miller of the Federal Circuit, sitting by designation.

[1]. Republic Industries, Inc., originally named as a defendant, was dismissed as a defendant before trial upon plaintiffs' motion. I R.Supp. 1.

The jury returned a special verdict in favor of plaintiffs on the fraudulent misrepresentation claim. The jury assessed $48,724 actual damages and $10,000 punitive damages against Riss, and $23,832.84 actual damages and $20,000 punitive damages against World Leasing, for a total award of $102,556.84 ($72,556.84 in actual damages and $30,000 in punitive damages). II R. 267. The jury found in favor of Riss on the breach of contract claim and in favor of plaintiffs on World Leasing's counterclaim. *Id.* at 267–68. The district court denied defendants' motion for judgment n.o.v., new trial, and remittitur, and denied plaintiffs' motion to alter or amend the verdict or for a new trial on the breach of contract issue. The court entered judgment in accordance with the jury's verdict. Defendants appeal and plaintiffs cross-appeal.

## II

### Real Party In Interest

■ Defendants argue that the district court erred in permitting Collins to be added as a plaintiff prior to trial and in denying defendants' motion to strike Collins as a plaintiff.[2] Defendants assert that Collins was not a real party in interest under Fed.R.Civ.P. 17(a).[3]

■ Defendants apparently contend that Collins should have been dropped as a plaintiff by the district court upon their motion under Fed.R.Civ.P. 21.[4] A district court's denial of a motion to drop a party will not be overturned on appeal absent an abuse of discretion. *See United States v. Wyoming National Bank,* 505 F.2d 1064, 1067 (10th Cir.1974); *see also Intercon Re-*

search Associates v. Dresser Industries, 696 F.2d 53, 56 (7th Cir.1982); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1688, at 342 (1972) ("The grant or denial of a motion to bring in or drop a party lies in the discretion of the judge.... The trial court's exercise of discretion will not be disturbed on appeal unless an abuse [of discretion] is shown.").

■ We must look to Kansas law in determining whether Collins is a real party in interest under Rule 17(a). *See, e.g., American National Bank & Trust Co. v. Weyerhaeuser Co.,* 692 F.2d 455, 459–60 (7th Cir.1982); *Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 604 (5th Cir.), *cert. dismissed,* 458 U.S. 1122, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982); *American Triticale, Inc. v. Nytco Services, Inc.,* 664 F.2d 1136, 1141 (9th Cir.1981); *see also Audio-Visual Marketing Corp. v. Omni Corp.,* 545 F.2d 715, 718–19 (10th Cir.1976); *Hoeppner Construction Co. v. United States,* 287 F.2d 108, 111 (10th Cir.1961); *cf. Harris v. Illinois-California Express, Inc.,* 687 F.2d 1361, 1373 (10th Cir.1982). "The forum state's procedural statute or rule defining the real party in interest concept is not applicable, however, because it only governs who may sue in the state courts; under Rule 17(a), the federal courts are concerned only with that portion of state law from which the specific right being sued upon stems." 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1544, at 647–48 (1971) (citing *American Fidelity and Casualty Co. v. All American Bus Lines,* 179 F.2d 7, 10 (10th Cir.1949)). We therefore must examine whether Kansas law permitted Collins to pursue the fraudu-

---

**2.** The real party in interest defense may be waived if it is not timely raised. *See, e.g., Hefley v. Jones,* 687 F.2d 1383, 1388 (10th Cir.1982); *Audio-Visual Marketing Corp. v. Omni Corp.,* 545 F.2d 715, 719 (10th Cir.1976). Defendants moved during trial to strike Collins as a named plaintiff. II R. 229. We therefore conclude that defendants did not waive the real party in interest defense.

**3.** Rule 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a).

**4.** Rule 21 provides as follows:

 Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed.R.Civ.P. 21.

lent misrepresentation claim against defendants.

Under Kansas law, "[o]ne who makes a fraudulent misrepresentation or concealment is subject to liability for pecuniary loss to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation or concealment." *Griffith v. Byers Construction Co.,* 212 Kan. 65, 510 P.2d 198, 199 (1973) (syllabus number 3 prepared by Kansas Supreme Court);[5] *see also Unified School District No. 490, Butler County v. Celotex Corp.,* 6 Kan.App.2d 346, 629 P.2d 196, 207 (1981). Most of the alleged misrepresentations involved here occurred at a July 1978 meeting attended by Collins and Moberly and representatives of Riss and World Leasing. The alleged misrepresentations concerned discussions of the award of Riss's local cartage contract and the purchase of tractors from World Leasing. K–B was incorporated on August 2. The local cartage agreement between K–B and Riss and the lease-purchase agreements be-

---

**5.** Kansas law provides for the preparation of syllabi of points of law by the authoring judge. *See* Kan.Stat.Ann. §§ 20–111, 20–203, 60–2106(b).

**6.** *Cf. Towle v. Boeing Airplane Co.,* 364 F.2d 590, 592–93 (8th Cir.1966) (where controlling shareholders, directors and officers of bankrupt corporation joined trustees in dissolution of corporation in action alleging fraud and breach of warranty, "there may be considerable uncertainty as to who is the real party in interest, the individuals or the corporation").

**7.** Defendants also contend that Collins lacked standing to bring the fraudulent misrepresentation claim. We believe, however, that the standing challenge is not properly raised in connection with real party in interest analysis under Rule 17(a). Professor Wright has explained that " '[t]he concept of real party in interest should not be confused with the concept of standing. The standing question arises in the realm of public law, when governmental action is attacked on the ground that it violates private rights or some constitutional principle....' 'Real party in interest' is very different from standing.' " C. Wright, *The Law of Federal Courts* 452–53 n. 2 (4th ed. 1983) (quoting *Kent v. Northern California Regional Office of American Friends Service Committee,* 497 F.2d 1325, 1329 (9th Cir.1974)).

---

tween K–B and World Leasing were executed two weeks later.

■ We hold that Collins is a real party in interest under Rule 17(a). He alleged that the fraudulent misrepresentations were made to him by defendants before K–B was formed and before the cartage agreement and lease-purchase agreements were signed. Collins contended that the misrepresentations induced him to form K–B and to enter into the cartage agreement and lease purchase-agreements.[6] We feel that under Kansas law, Collins was a person whom defendants "intend[ed] or ha[d] reason to expect to act or refrain from an action in reliance upon the misrepresentation or concealment." [7]

### III

### Plaintiffs' Exhibits 9, 13 and 26

■ Defendants argue that the district court erred in not excluding Plaintiffs' Exhibits 9, 13 and 26 [8] under Fed.R.Evid.

---

In any event, defendants' challenge to Collins' standing must fail. It is well settled that "a shareholder does not have standing to redress an injury to the corporation in which it holds stock." *EMI Ltd. v. Bennett,* 738 F.2d 994, 997 (9th Cir.1984); *see also Shell Petroleum N.V. v. Graves,* 709 F.2d 593, 595 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983); *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 439–40 (9th Cir.1979). In this case, however, Collins asserted an interest different than that of sole shareholder of K–B. Collins contended that defendants made fraudulent misrepresentations which induced him to form K–B and enter into the cartage agreement and lease-purchase agreements. *Cf. Sherman,* 601 F.2d at 439–40 (president and sole shareholder of corporation lacked standing to pursue claims under federal statute and state common law for injuries done to corporation). We conclude, for the reasons expressed in our real party in interest discussion, that Collins had standing to bring the fraudulent misrepresentation claim against defendants.

**8.** Defendants also challenge the district court's admission of Exhibit 17, a manifest which represented the freight transferred at the Riss terminal by K–B personnel. IV R. 502–09. Plaintiffs argue that defendants did not specifically object to the admission of Exhibits 17 and 26 under Rule 403, but instead objected solely on the ground of foundation, which plaintiffs sub-

403. Exhibit 9 was a maintenance record of the trucks leased by K–B, including a list of breakdowns, towing charges, and maintenance costs. III R. 449. Exhibit 13 was a weekly compilation of the amount of money paid by Riss to K–B and the amount of money withheld by Riss. *Id.* at 450. Exhibit 26 was a list of other cartage services that Riss used in January 1979 in addition to those performed by K–B. *Id.* at 568–70.

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Defendants argue that Exhibits 9, 13 and 26 were "unduly cumulative evidence" and that the district court's admission of the exhibits over objection "was prejudicial to defendants and the prejudice substantially outweighed the materiality of the evidence." Brief of Appellants 17. We disagree.

 The exclusion of relevant evidence under Rule 403 is "an extraordinary remedy to be used sparingly." *United States v. Plotke,* 725 F.2d 1303, 1308 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984); *see also United States v. Edwards,* No. 84–1633, slip op. at 4 (10th Cir. April 22, 1985); *United States v. Thevis,* 665 F.2d 616, 633 (5th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303, 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1370, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). The decision to exclude (or admit) evidence under this rule is within the sound discretion of the trial court, and will not be reversed by this court absent a clear abuse of discretion. *United States v. Edwards,* slip op. at 4; *Whiteley v. OKC Corp.,* 719 F.2d 1051, 1057 (10th Cir.1983); *Beacham v. Lee-Norse,* 714 F.2d 1010, 1014 (10th Cir.1983); *United States v. Golden,* 671 F.2d 369, 371 (10th Cir.), *cert. denied,* 456 U.S. 919, 102 S.Ct. 1777, 72 L.Ed.2d 179 (1982); *United States v. Mangiameli,* 668 F.2d 1172, 1176 (10th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982); *United States v. Guerrero,* 667 F.2d 862, 867 (10th Cir.1981), *cert. denied,* 456 U.S. 964, 102 S.Ct. 2044, 72 L.Ed.2d 490 (1982).[9] More-

---

sequently satisfied. *See* Brief of Appellees 19; *see also* X R. 139–40 (Exhibit 17), 153–54 (Exhibit 26).

Rule 103(a)(1) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and, in case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." Fed.R.Evid. 103(a)(1). A party therefore may not challenge admission of evidence by the trial court on appeal under Rule 403 unless the party specifically objected to admission of the evidence. *See, e.g., Jay Edwards, Inc. v. New England Toyota Distributor, Inc.,* 708 F.2d 814, 823 (1st Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983); *see generally* 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[02], at 103–21 to 103–22 (1982). We have held that a standing objection is not sufficient to preserve for appeal a challenge to the admission or exclusion of evidence under Rule 403. *See United States v. Mangiameli,* 668 F.2d 1172, 1177 (10th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982).

We note that defendants objected to the admission of Exhibits 9 and 13 on the ground that they were, among other things, cumulative. *See* X R. 117–18 (Exhibit 9), 133–34 (Exhibit 13). This objection was specific enough to preserve the Rule 403 issue for appeal with respect to these two exhibits. Although defendants objected to Exhibit 26 on the ground of lack of foundation, *id.* at 153, they also objected to the exhibit on the ground that it was, among other things, repetitious. *Id.* at 141. With regard to Exhibit 17, however, defendants posed "no objection to the [Exhibit 17] manifests themselves," but objected solely on the ground of a lack of foundation. *Id.* at 139. Defendants therefore failed to preserve for appeal their challenge to the admission of Exhibit 17 under Rule 403.

**9.** Judge Weinstein and Professor Berger have explained that "[t]he usual approach on the question of admissibility on appeal [under Rule 403] is to view both probative force and prejudice most favorably towards the proponent, that is to say, to give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 403[03], at 403–25 to 403–26 (1982); *see also United States v. Kipkin,* 729 F.2d 384, 389 (6th Cir.1984) (appellate court review of exercise of trial court's

over, error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error. Fed.R.Evid. 103(a)(1); Fed.R.Civ.P. 61. *See Perry v. State Farm Fire & Casualty Co.,* 734 F.2d 1441, 1446 (11th Cir.1984), *cert. denied,* ——— U.S. ———, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985).

 It is true, as defendants allege, that much of what is contained in Exhibits 9, 13 and 26 was testified to by plaintiff Collins. However, these exhibits also contained useful figures and details that supported Collins' testimony and that may have been helpful to the jury. *See* X R. 143 (district court admitted Exhibit 26 because it "had some figures that might be helpful," and was not just a narrative of Collins' testimony). Defendants have failed to show that the district court abused its discretion in admitting these exhibits, or that the court's action affected their substantial rights.

## IV

### Proof of Fraud

 Defendants argue that there was insufficient evidence to support the jury's finding that Riss and World Leasing were liable for fraud. Under Kansas law, "[a]ctionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with a disregard for truth, where another party justifiably relies on the statement and acts to his injury." *Lentz Plumbing Co. v. Fee,* 235 Kan. 266, 679 P.2d 736, 742 (1984); *see also Nordstrom v. Miller,* 227 Kan. 59, 605 P.2d 545, 552–52 (1980); *Scott v. Strickland,* 10 Kan.App.2d 14, 691 P.2d 45, 51

discretion under Rule 403 is "limited," and must "look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing is prejudicial effect"); *United States v. Long,* 574 F.2d 761, 767 (3d Cir.), *cert. denied,* 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978).

(1984).[10] Evidence supporting a finding of fraud must be clear and convincing. *See, e.g., W–V Enterprises, Inc. v. Federal Savings & Loan Insurance Corp.,* 234 Kan. 354, 673 P.2d 1112, 1121 (1983); *Nordstrom v. Miller,* 605 P.2d at 552; *see also Mackey v. Burke,* 751 F.2d 322, 328 (10th Cir.1984) (applying Kansas law).[11] Defendants contend that there was insufficient evidence to support a finding either that defendants knowingly misrepresented material facts or that plaintiffs justifiably relied on these alleged misrepresentations. We disagree.

### A. Knowing Misrepresentation of Material Facts

Under Kansas law, "[w]hen alleged fraud relates to promises or statements concerning future events, the gravamen of such a claim is not the breach of the agreement to perform, but the fraudulent representation concerning a present, existing intention to perform, when such intention is in fact nonexistent." *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 596 P.2d 816, 824 (1979); *see also Mackey v. Burke,* 751 F.2d at 328 (applying Kansas law).

 Defendants argue that "[t]here was absolutely no evidence to establish even an inference that Riss and World Leasing knew that the promised events would not occur at the time the representations were made." Brief of Appellants 19. Defendants contend that no misrepresentations of material fact occurred; instead, the evidence indicated that mere "sales puffing" was involved. *Id.* The alleged promises relied on by plaintiffs—that the rates were "reasonable," that K–B would be "paid on time," that K–B "would make a profit," and that the tractors would be put in "A–1" condition—"did not relate to exist-

**10.** The district court correctly instructed the jury on the elements of a fraud claim under Kansas law. *See* II R. 244.

**11.** The district court instructed the jury on this requirement. *See* II R. 243.

ing fact but rather referred to some facts which might develop in the future." *Id.* at 20.

However, "Kansas has long recognized the general rule that fraud may be shown by circumstantial as well as by direct and positive proof." *Chute v. Old American Insurance Co.*, 6 Kan.App.2d 412, 629 P.2d 734, 742 (1981). Accordingly, fraud "may be proved by showing circumstances from which the inference of fraud is natural and irresistible; and if such circumstances are established and they are of such a character as to produce in the mind of the trier of fact a conviction of the fact of fraud, then it must be considered that fraud is proven." *Id.*

There was sufficient circumstantial evidence to support an inference by the jury that defendants knowingly misrepresented material facts and thereby intended to defraud plaintiffs. For example, plaintiff Collins testified that defendant World Leasing through its agents promised plaintiffs that World Leasing would repair the tractors to get them in "A–1 condition" within thirty days after K–B began operations, and that World Leasing would provide free repairs during that period. *See* X R. 58–61 (testimony of plaintiff Collins). However, other evidence indicated that K–B began having difficulties with the tractors immediately after beginning business, that World Leasing would not perform any of the promised repairs free of charge, and that plaintiffs had to have the tractors repaired elsewhere. *See id.* at 117–30. In addition, Collins and his attorney testified that Riss and its agents promised that Riss would timely pay reasonable rates for cartage services performed by K–B, and that K–B would be profitable and would average over $10,000 per week in gross revenues. *See* X R. 63–64, 130–39; XII R. 426–27. Collins testified that K–B was not profitable and did not have gross revenues of over $10,000 per week, and that Riss did not pay reasonable rates to K–B and did not make timely payments to K–B. *See* XI R. 189, 232; X R. 30–34, 155–64. Thus an inference of misrepresentation of present facts known to Riss could be drawn.

We cannot accept defendants' view that any promises they may have made with respect to profitability, rates and gross revenues constituted mere sales puffing. Kansas courts have recognized that promises regarding future income and earnings can constitute actionable fraud. *See, e.g., Fisher v. Mr. Harold's Hair Lab, Inc.*, 215 Kan. 515, 527 P.2d 1026, 1034–35 (1974); *Hawthorn-Mellody, Inc. v. Driessen*, 213 Kan. 791, 518 P.2d 446, 451–53 (1974). An important factor supporting the decision in these cases was the existence of superior knowledge on the part of the promising party. *See Fisher v. Mr. Harold's Hair Lab, Inc.*, 527 P.2d at 1035; *Hawthorn-Mellody, Inc. v. Driessen*, 518 P.2d at 453. The evidence here similarly supports the finding that defendants' promises relating to income and earnings constituted actionable fraud because defendants had superior knowledge and experience of the local market for cartage services. Although Collins had over fifteen years' experience in the trucking industry, he never before had run his own cartage company. Riss, on the other hand, was knowledgeable about its Kansas City cartage operation and had recent experience with another local cartage company. Moreover, World Leasing had experience in renting trucks for cartage operations. We conclude that there was sufficient evidence to support the jury's finding that defendants knowingly misrepresented material facts.

**B. Justified Reliance**

Plaintiff Collins testified that he relied upon defendants' misrepresentations. XI R. 185–86. Defendants contend that Collins' reliance was not justified. Brief of Appellants 20–27. Defendants point to Collins' knowledge and fifteen years' experience in the trucking industry and argue that his failure to make any inquiry into the records, expenses, income or losses of the company which K–B succeeded as cartage carrier for Riss precludes a finding that his reliance on the misrepresentation was justified. According to defendants, a reasonable inquiry into these records would

have given Collins notice of the losses and costs of operation of K–B's predecessor company and thereby prevented him from reasonably relying on the representations made by defendants.

Under Kansas law, " '[a] recipient of fraudulent misrepresentation is justified in relying upon its truth without investigation, unless he knows or has reason to know of facts which make his reliance unreasonable.' " *Goff v. American Savings Ass'n*, 1 Kan.App.2d 75, 561 P.2d 897, 903 (1977) (quoting *Restatement (Second) of Torts* § 540 (Tent. Draft No. 11, 1965)). "[T]he test is whether the recipient has 'information which would serve as a danger signal and a red light to any normal person of his intelligence and experience.' " *Id.* (quoting *Restatement (Second) of Torts* § 540 & Comments) (Tent. Draft No. 11, 1965). *See also Sippy v. Cristich*, 4 Kan. App.2d 511, 609 P.2d 204, 208 (1980).

■ We believe there was sufficient evidence to support the jury's finding that Collins reasonably relied upon defendants' misrepresentations. Collins did not have "reason to know of facts which make his reliance unreasonable," and did not have "information which would serve as a danger signal and a red light." Defendants' criticism of Collins' failure to seek out information about K–B's predecessor company is unpersuasive in light of evidence that the predecessor company's financial records were in a state of "total confusion." XII R. 559. Our conclusion is supported by Kansas cases that have refused to impose a duty to investigate in similar circumstances.[12]

## V

### Proof of Damages

The jury returned a special verdict on the fraud claim in favor of plaintiffs and against Riss for $48,724 in actual damages

---

**12.** In *Hawthorn-Mellody, Inc. v. Driessen,* for example, the Kansas Supreme Court held that a defrauded purchaser reasonably relied on misrepresentations made by a distributor in connection with the purchase of a dairy products distributorship. 518 P.2d at 451–53. Although the purchaser had thirty years' experience in the retail dairy business, the court held that he reasonably relied on a promise of a $3,000 per month profit from the milk distributorship:

> We also think it [is] important here that the representatives of the [distributor] had superior knowledge of the milk distributorship in the territory. Any prior familiarity of [the purchaser] with the milk business did not extend to the particular territory to be covered by the milk distributorship contract and he, of course, had to rely to some extent upon the superior knowledge of the [distributor] as to past experience of their own distributors in the area.

*Id.* at 453. *See also Fisher v. Mr. Harold's Hair Lab, Inc.,* 215 Kan. 515, 527 P.2d 1026, 1034 (1974).

On the other hand, Kansas courts in other circumstances have held that a purchaser could not reasonably rely on statements by a seller. For example, in *Goff v. American Savings Association,* a bank appraiser told a home purchaser that the basement in a newly-constructed home would not leak. The basement leaked. The purchaser brought a fraud suit against the bank. The trial court granted summary judgment for defendant and the purchaser appealed. The Kansas Supreme Court stated:

> Many factors must be considered in determining whether a statement is a matter of fact or matter of opinion and whether or not a plaintiff has a right to rely on the statement. Among the facts the court will take into consideration are the intelligence, education, business experience and relative situation of the parties; the general information and experience of the persons involved as to the nature and use of the property; the habits and methods of those in the industry or profession involved; the opportunity for both parties to make an independent investigation as well as the nature, extent and result of any investigation so made; and any contract the parties knowingly and understandingly entered into.

561 P.2d at 901. The court held that the purchaser could not reasonably rely on the statements by the bank appraiser. The court emphasized that the inspection by the appraiser was done solely for the benefit of the bank; that the purchaser had actual knowledge of the cracks in the basement wall; that the purchaser had requested the contractor to guarantee that the basement would not leak, but the contractor had refused; that the purchaser conducted a further investigation of his own and consulted two family friends on the subject, including another building contractor; and that the purchaser was told by two cement contractors that the basement would not hold water out. *Id.* at 902–03.

and against World Leasing for $23,832.84 in actual damages. II R. 267. Defendants moved for a new trial or a remittitur. *Id.* at 282. The trial court denied this motion. *Id.* at 307–11. On appeal, defendants contend that there was insufficient evidence to support the jury's finding of actual damages.[13]

 Kansas follows the "benefit of the bargain" rule in awarding damages for fraud. Under this approach, "in a damage action by a purchaser for fraud inducing the purchase, the measure of damages is the difference between the actual value of the property at the time of the sale and the value it would have had if the representations had been true." *Fox v. Wilson,* 211 Kan. 563, 507 P.2d 252, 267 (1973); *see also Fisher v. Mr. Harold's Hair Lab, Inc.,* 527 P.2d at 1035–36; *Walker v. Fleming Motor Co.,* 195 Kan. 328, 404 P.2d 929, 932–34 (1965); *Perry v. Schoonover Motors, Inc.,* 189 Kan. 608, 371 P.2d 152, 155–56 (1962); *Sippy v. Cristich,* 609 P.2d at 210–11. Accordingly, the proper measure of damages for fraudulent misrepresentations concerning the tractors is the difference between the actual value of the lease-purchase agreements and the value of the lease-purchase agreements as represented. The proper measure of damages for fraud in inducing plaintiff Collins to conduct the cartage operation for Riss is the difference between the actual value of the cartage contract and the value the cartage contract would have had if the representations had

been true. Defendants contend that plaintiffs failed to present any evidence regarding the represented value of the lease-purchase agreements or the represented value of the cartage contract.

## A. World Leasing

 We first consider the sufficiency of the evidence to support the $23,832.84 damage award against World Leasing. Under Kansas law, here the value of the nine tractors as represented can be equated with the purchase price that World Leasing charged K–B, or $114,400.[14] *See Fox v. Wilson,* 507 P.2d at 254 (syllabus number 15 prepared by Kansas Supreme Court) ("In a fraud action where no evidence is introduced by either party to indicate that if the seller's representations had been true the property would have had any different value than the sales price, that price may be utilized as the 'represented' value of the property in assessing damages."). The evidence indicated that the actual value of the tractors was $6,423.24 each, for a total of $57,809.16.[15] Accordingly, the $23,832.84 in damages awarded against World Leasing was well within the evidence ($56,590.84).

## B. Riss

We next consider the sufficiency of the evidence to support the $48,724 damage award against Riss. The evidence indicated that the actual resulting value of the cartage contract was the $29,000 loss[16]

---

**13.** Defendants do not separately challenge the punitive damage awards, apparently relying on their general challenge to the fraud claims as a basis for reversal of the punitive damage awards.

**14.** The purchase price for each of the seven 1973 tractors was $13,000, and the purchase price for each of the two 1972 tractors was $11,700, for a total of $114,400.

**15.** The President of World Leasing quoted this figure in interrogatories, I R. 112, and his deposition was read into evidence at the trial. XI R. 280. A former manager of World Leasing testified that World Leasing did not overpay or underpay for the tractors. XI R. 339, 360–61. An employee testified that World Leasing acquired the tractors no earlier than June 26,

1978, and that he did not think that any repair work was performed on the tractors by World Leasing from that time until August 14, 1978, when K–B and World Leasing entered into the lease-purchase agreements. XII R. 500, 502.

**16.** Plaintiffs contend that the value of the cartage contract as represented by Riss should be a hypothetical $1.00, representing the profitability promised by Riss. Accordingly, the actual value of the cartage contract (the $29,000 operating loss) should be subtracted from this hypothetical $1.00 in promised profitability to yield the total damages for the fraudulent misrepresentations concerning the value of the cartage operation. *See* Brief of Appellees 39–40.

suffered by K–B in its few months of operation. *See* XI R. 188 (testimony of plaintiff Collins). Although this figure as a basis for damages is less than the jury's verdict of $48,724, plaintiffs argue that sufficient evidence supports the jury's full award of $48,724 on two grounds.

First, plaintiffs contend that $55,000 in future profits should be considered as the value of the cartage contract as represented. There is no evidence, however, that Riss represented to plaintiffs that K–B would earn $55,000 in profits in its first year of operation; the evidence only revealed that Riss's agents promised that Riss would timely pay reasonable rates for cartage services performed by K–B, and that K–B would be profitable and would average over $10,000 per week in gross revenues. *See* X R. 63–64, 130–39; XII R. 426–27. For example, Collins testified that "[b]ased on the $10,000 a week [in revenues] that [Riss] had mentioned, *I* projected an annualized revenue from Riss, *I* thought with good control of expenses we might enjoy a 10 percent profit which would generate profits in excess of a thousand dollars a week." X R. 65 (emphasis added); *see also* XI R. 186–89, 201–04, 222–23. Moreover, Collins admitted in part of his deposition read to the jury that Riss did not promise that K–B would earn a specific amount of profits:

QUESTION: Did anybody say anything about the rate of return you could expect or whether you could expect to make a profit or not?

ANSWER: Only the statement, that [Riss's agent] made about we could expect a gross in excess of $10,000 a week.

QUESTION: But [Riss's agent] didn't state or imply anything about profitability?

ANSWER: I don't recall that he did, no.

XIII R. 724–25. In a later portion of the deposition, Collins admitted that Riss's agent did not assure him that K–B would earn a specific percentage of profits, but he contended that Riss had implied that K–B would be profitable:

QUESTION: So no specific percentage of profitability was assured to you?

ANSWER: That's correct.

QUESTION: But you're saying that profitability was assured to you?

ANSWER: Implied.

QUESTION: Implied, O.K. It wasn't a specific expressed representation, then?

ANSWER: Nobody said I'm going to make ten percent on my investment.

*Id.* at 733. The $55,000 in lost profits was thus based on Collins' speculation that he could anticipate a 10% profit on the gross revenues promised by Riss.

■ Lost profits may be recovered in a fraud action "where the evidence permits reasonable conclusions about the losses, but not where it is mere speculation." D. Dobbs, *Handbook of the Law of Remedies* 601 (1973); *see also Crues v. KFC Corp.*, 729 F.2d 1145, 1151 (8th Cir.1984) (in action for fraudulent misrepresentation in connection with purchase of restaurant franchise, evidence of profits from other franchises admissible under benefit of the bargain theory to draw a "rational estimate" of anticipated profits from franchise). The general rule, however, is that "[i]n the case of claims for lost profits due to fraud, ... it is usually said that where the business in which such profits are allegedly lost is a new or unestablished one, losses are necessarily too speculative and recovery is denied." D. Dobbs, *supra*, at 601; *see also Fredonia Broadcasting Corp. v. RCA Corp.*, 569 F.2d 251, 259 (5th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978).[17]

---

17. Kansas courts have discussed damage awards for lost profits in a series of cases. *See W–V Enterprises, Inc. v. Federal Savings & Loan Insurance Corp.*, 234 Kan. 354, 673 P.2d 1112, 1122–23 (1983) (upheld award of lost profits for two established businesses in fraud action); *Butler v. Westgate State Bank*, 226 Kan. 581, 602 P.2d 1276, 1277–79 (1979) (evidence of lost profits for new business, which consisted of one person's testimony, held to be too speculative in breach of contract action); *Vickers v. Wichita State University*, 213 Kan. 614, 518 P.2d 512, 517

The admissibility of Collins' speculation that he anticipated a 10% profit on the gross revenues promised by Riss, for a total of $55,000 in anticipated profit in the first year of operation, was contested in the trial court. At a motions hearing out of the presence of the jury, counsel differed over whether Collins' speculation of $55,000 in anticipated profits was admissible. The trial court questioned counsel about the "general rule which is that where business has no track record [and] you have absolutely no evidence of even businesses like it, that loss of profits is not an element of damage." XIII R. 743. Plaintiffs' counsel argued that the rule was applicable under a breach of contract theory, but not under a fraud theory. *Id.* at 744. The trial court responded:

Well, I think what you are doing, you are just getting in the back door what you can't get in the front door and using as an excuse the fraud concept, and I don't think that is the way the fraud concept can be used. It is the benefit of the bargain.

In [Collins'] mind he was hoping to make $55,000 maybe, but the facts are that what he got here as against what he was promised just in bare dollars and cents, not profit. He had no track record. He had no experience, even, in this business to even—this [$55,000] is just a figure that somebody has pulled

out of the air, so far as the evidence is concerned.

*Id.* at 747–48.[18]

Although the court noted that "the law is clear as a bell that you can't have lost profits when you don't have anything to show that you have had any experience in the business that would justify profits," the trial judge stated that "I realize what [plaintiffs] are arguing is that [defendants] were guilty of fraud and had everything been as they represented, that [Collins] would have made this kind of profit in his own mind, for whatever that's worth." *Id.* at 751. The court admitted into evidence Exhibit 56, I R. Supp. 6, which contained a series of figures including the $55,000 profit anticipated by Collins, XIII R. 751, but admonished the jury that "the Court has stricken from your consideration any evidence as to future lost profits by K–B Trucking. Any projections that Mr. Collins made, that has been stricken now from your consideration." *Id.* at 761.

We conclude that evidence that Collins anticipated a $55,000 profit cannot be used to sustain the $48,724 damage award against Riss. There is no evidence that Riss represented that K–B would earn $55,000 in profits, and any conclusions regarding the lost profits would be speculative in light of the absence of evidence to support the lost profits claim.[19] Accord-

(1974) (in action for breach of contract to televise college basketball games, lost profits recoverable where "[t]here are techniques available in the advertising and television business by which profits can be calculated with reasonable certainty"). .

18. The court emphasized that "[w]e don't have any figures about expenses, nothing at all about what his real expenses were or whether they were reasonable or anything of the kind, and that is the very reason for these rules that people just can't pull these figures out of thin air when they have got no experience or no track record in the business." XIII R. 749.

19. In denying defendants' motion for judgment n.o.v., for a new trial, and for a remittitur, the district court stated:

Defendants have repeatedly objected to the testimony of Collins regarding future earnings and profits. Defendants contend it was error

to admit such evidence since the business had no track record and no evidence of a comparable business was introduced. Defendants, however, have taken too narrow a view of the relevancy of the testimony of Collins concerning future earnings and profits. Collins testified that defendants' agents discussed the amount of money he could make in leasing trucks from World Leasing and handling cartage business for Riss International for one year. This evidence of earnings and profits under the contract was relevant to the misrepresentation of defendants and the inducement to plaintiffs to enter into a business arrangement that in hindsight appeared doomed from its inception. Therefore, defendants' objection to this evidence was properly overruled. II R. 308. Although we agree that any representations made by defendants with respect to the future revenues and profits of K–B could properly be considered by the jury in awarding damages, we must again emphasize that there is *no*

ingly, we must examine plaintiffs' second argument in support of the jury's damage award against Riss.

■ Plaintiffs further argue that because the amount of admissible evidence of damages against World Leasing (approximately $56,000), plus the evidence of damages against Riss to compensate for plaintiffs' loss ($29,000), without consideration of lost profits, is a figure (approximately $85,000) greater than the combined damages awarded by the jury against both defendants (approximately $73,000), the full jury award against both defendants should be sustained.[20] We disagree.

We are dealing with separate judgments against two distinct defendants. Plaintiffs ask that we use the evidence of damages against one defendant on a fraud claim to support a damage award against another defendant on a separate fraud claim. Plaintiffs do not direct us to any authority to support its argument, see Brief of Appellees 39–40, and we know of no principle of law that authorizes such a practice where joint and several liability is neither alleged nor proven. Accordingly, we conclude that there is sufficient evidence to support the jury's award of $23,832.84 in actual damages against World Leasing, but that there is insufficient evidence to support the jury's award of $48,724 in actual damages against Riss.

**C. Appropriate Relief**

Having decided that there was sufficient evidence to support the jury's finding that World Leasing and Riss were liable for fraud, as well as sufficient evidence to support the $23,832.84 actual damage award against World Leasing, we next must determine what relief is appropriate in light of our holding that there is insufficient evidence to support the $48,724 damage award against Riss. We believe that a remittitur is appropriate in these circumstances.

■ Federal law governs the decision whether a remittitur should be granted in a diversity case. *See, e.g., Donovan v. Penn Shipping Co.,* 429 U.S. 648, 649–50, 97 S.Ct. 835, 836–37, 51 L.Ed.2d 112 (1977) (per curiam); *West v. Jutras,* 456 F.2d 1222, 1225 n. 6 (2d Cir.1972); 19 C. Wright, A Miller & E. Cooper, *Federal Practice and Procedure* § 4511, at 179 (1982). "Under federal law, whether the trial court properly refused to grant remittitur or a new trial on the ground of an excessive damage award is tested by an abuse of discretion standard." *Garrick v. City and County of Denver,* 652 F.2d 969, 971 (10th Cir.1981); *see also Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1447–48 (11th Cir.1985); *Brown v. Skaggs-Albertson's Properties, Inc.,* 563 F.2d 983, 988 (10th Cir.1977). We conclude that, in light of the insufficiency of the evidence to support the damage award against Riss, the district court abused its discretion in refusing to order a remittitur and alternatively direct a new trial on the issue of the proper amount of damages to be awarded against Riss if plaintiffs refused to accept the remittitur.

■ Although there are a number of approaches in setting the amount of the remittitur,[21] we believe the facts of this

---

evidence that Riss represented that K–B would earn $55,000 in profits or that K–B could expect a 10% profit on gross revenues; the only evidence was that Riss represented that K–B could expect $10,000 per week in gross revenues. Accordingly, we must hold that Collins' speculation that K–B would earn a 10% profit on these revenues, for a total of $55,000 in profits in the first year of operation, cannot support the jury's damage award against Riss.

20. The trial court accepted this argument in denying defendants' motion for judgment n.o.v., for a new trial, and for a remittitur. *See* II R. 309 ("[D]efendants claim that the verdict

was excessive by $55,000.00 because of an erroneous admission of evidence as to future profits. Even excluding the evidence of future profits of $55,000.00, there was more than sufficient evidence and reason for the jury to return a verdict of $72,556.84 in actual damages.").

21. There are three general approaches for determining the proper amount of a remittitur. First, the excessive verdict may be reduced to the minimum amount that the jury could have awarded. Second, the excessive verdict may be reduced to the maximum amount that the jury could have awarded. Third, the excessive ver-

case require that we fashion a remedy based on the maximum amount of damages that is reasonably supported by the evidence in the record. *See, e.g., Goldstein v. Manhattan Industries, Inc.*, 758 F.2d at 1448 ("[A] remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence."); *Dixon v. International Harvester Co.*, 754 F.2d 573, 590 (5th Cir.1985) (employing a " 'maximum recovery rule' " to determine the size of the remittitur "by reducing the verdict to the maximum amount the jury could properly have awarded"); *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983) (same).

██ Accordingly, we remand the case with directions that the trial court enter a remittitur order for acceptance of a judgment reducing the damage award against Riss to $29,000, or otherwise for a new trial on the issue of damages against Riss.[22]

dict may be reduced to whatever amount the reviewing court thinks that the jury should have allowed. *See* 6A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 59.08[7], at 59–195 to 59–198 (1984); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2815, at 104–05 (1973). Professors Wright and Miller maintain that the second alternative "is the only theory that has any reasonable claim of being consistent with the Seventh Amendment." 11 C. Wright & A. Miller, *supra*, § 2815 at 104–05. Professors Moore and Lucas favor the third alternative as a "fair and practicable adjustment." 6A J. Moore & J. Lucas, *supra*, ¶ 59.08[7], at 59–198.

22. A new trial on part of the issues is appropriate where "it clearly appears that the issue to be retried is so distinct and separate from the others that a trial of it alone may be without injustice." *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). Professors Wright and Miller explain that

if an error at the trial requires a new trial on one issue, but this issue is separate from the other issues in the case and the error did not affect the determination of the other issues, the scope of the new trial may be limited to the single issue. Perhaps the most common example is the grant of a new trial limited to damages when liability has been properly determined.

## VI

### Plaintiffs' Cross-Appeal

In their cross-appeal, plaintiffs argue that the district court erred in granting defendants' motions for directed verdicts on plaintiffs' breach of warranty and conversion claims. Brief of Appellees 40–47.

In considering a motion for a directed verdict, " '[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.' " *Hurd v. American Hoist and Derrick Co.*, 734 F.2d 495, 499 (10th Cir.1984) (quoting 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2524, at 943 (1971) (footnote omitted)). "We must view the evidence in the light most favorable to plaintiffs as the party against whom the motions were made." *Mackey v. Burke*, 751 F.2d 322, 325 (10th Cir.1984); *see also Downie v. Abex Corp.*, 741 F.2d 1235, 1238 (10th Cir.1984).

11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2814, at 93 (1973) (footnotes omitted); *see also* J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 59.06, at 59–56 to 59–58 (1984). Professors Wright and Miller note that "a new trial on damages only is not proper if there is reason to think that the verdict may represent a compromise among jurors with different views on whether defendant was liable or if for some other reason it appears that the error on the damage issue may have affected the determination of liability." *Id.*, § 2814, at 96–97 (as corrected in 1985 Pocket Part at 21) (footnote omitted); *see National Railroad Passenger Corp. v. Koch Industries, Inc.*, 701 F.2d 108, 110 (10th Cir.1983); *Brown v. Richard H. Wacholz, Inc.*, 467 F.2d 18, 21 (10th Cir.1972); *see also Maxey v. Freightliner Corp.*, 727 F.2d 350, 351–53 (5th Cir.) (on petition for rehearing and suggestion for rehearing en banc), *modifying* 722 F.2d 1238 (5th Cir.1984).

We believe that the issues are sufficiently distinct with regard to the liability of World Leasing and Riss and the damages against Riss so that if plaintiffs refuse to accept the reduced amount of damages against Riss, plaintiffs may proceed with a new trial against Riss limited to the appropriate amount of damages for which Riss is liable.

## A. Breach of Warranty

Kansas law provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." Kan.Stat. Ann. § 84-2-315. In granting defendants' motion for directed verdict on plaintiffs' breach of warranty claim, the district court held that § 84-2-315 did not apply to the lease-purchase agreements. XII R. 543-44. In their trial brief, plaintiffs had argued that although the lease-purchase agreements in form were leases, in effect they were installment sales contracts subject to the warranty provisions of the Uniform Commercial Code. See I R. 97-100 (citing *Atlas Industries, Inc. v. National Cash Register Co.*, 216 Kan. 213, 531 P.2d 41 (1975)). The district court rejected this argument and held that "[t]he Kansas cases that [plaintiffs] rely on are distinguishable." XII R. 544.

 We recognize that "[t]he views of a resident district judge on the unsettled law of his state are persuasive and ordinarily accepted." *Sade v. Northern Natural Gas Co.*, 483 F.2d 230, 234 (10th Cir. 1973). Nevertheless, we must conclude that the district court erred in holding that § 84-2-315 did not apply to these lease-purchase agreements. Although the statute only applies to the sale of goods and not to leases, Kansas employs the "economic realities" test to determine if a transaction labeled as a lease is actually an installment sale. *See Atlas Industries, Inc. v. National Cash Register Co.*, 531 P.2d at 44-47.

One important factor under this approach is whether the lessee at the end of the lease term can exercise the option to purchase for no consideration or for a nominal consideration. *See, e.g., Beneficial Commercial Corp. v. Cottrell*, 688 P.2d 1254, 1256 (Mont.1984); *Western Enterprises, Inc. v. Arctic Office Machines, Inc.*, 667 P.2d 1232, 1234-36 (Alaska 1983) (per curiam); *Diede v. Davis*, 661 P.2d 838, 840-41 (Mont.1983); *see generally* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 880-84 (2d ed. 1980).

 The economic realities of the agreements between K-B and World Leasing indicate that the parties intended the transactions to be installment sales rather than leases.[23] The "cost of lease contract" was tantamount to a 12¾% interest rate applied to the balance after subtracting the down payment from the initial purchase price. *See* XI R. 339 (former manager for World Leasing stated in deposition testimony read to jury that "cost of lease contract" charge was an interest charge). After the weekly payments for 1½ years, plaintiffs would be entitled to possession without payment of any further consideration in exercising the option to purchase. In these circumstances, we conclude that § 84-2-315 applied to these lease-purchase agreements. However, we hold that the district court did not err in directing a verdict on the breach of warranty claim because we believe that any damages recoverable under § 84-2-315 were subsumed by the fraud claim against World Leasing. *See* Kan.Stat.Ann. §§ 84-2-714(2), 84-2-721; *see also Coleco Industries, Inc. v. Berman*, 567 F.2d 569, 575 (3d Cir.1977), *cert. denied*, 439 U.S. 830, 99

---

**23.** The payments to be made under the "lease with option to purchase agreements" were as follows:

7 1973 Tractors:

| | | |
|---|---|---|
| initial purchase price | | $13,000 |
| − down payment | | 1,300 |
| balance | | 11,700 |
| + cost of lease contract | | 1,491.75 |
| total balance amount | | 13,191.75 |
| 78 weekly payments at $169.13 | | |

2 1972 Tractors:

| | | |
|---|---|---|
| initial purchase price | | $11,700 |
| − down payment | | 950 |
| balance | | 10,750 |
| + cost of lease contract | | 1,370.63 |
| total balance amount | | 12,120.63 |
| 78 weekly payments at $155.39 | | |

S.Ct. 106, 58 L.Ed.2d 124 (1978); *Clifford v. River Bend Plantation, Inc.*, 55 N.C. App. 514, 286 S.E.2d 352, 356 (1982). Hence no additional damages could be recovered on the warranty claim.

### B. Conversion

■■■■ Plaintiffs also argue that the district court erred in granting defendants' motion for a directed verdict on the conversion claim. The district court concluded that there was no evidence to support the allegation of conversion. XII R. 543–44. We agree that the evidence revealed that World Leasing held legal title to the tractors at issue and that therefore a conversion claim is unsupported on these facts. *See, e.g., Temmen v. Kent-Brown Chevrolet Co.*, 227 Kan. 45, 605 P.2d 95, 99 (1980); *Desbien v. Penokee Farmers Union Cooperative Ass'n*, 220 Kan. 358, 552 P.2d 917, 924 (1976).[24] Moreover, plaintiff had ceased making payments on the lease-purchase agreements, X R. 178, so that their right to possession had ended.

### VII

### Conclusion

The judgment of the district court awarding plaintiffs $23,832.84 in compensatory damages and $20,000 in punitive damages against defendant World Leasing on the fraud claim is **AFFIRMED.** The judgment against defendant Riss on the fraud claim is **VACATED** and the cause is **REMANDED** to the district court with directions that an order be entered providing that if, within a reasonable time to be fixed by the district court, plaintiffs accept a reduction of the judgment of compensatory damages against defendant Riss to $29,000, and any reduction of the judgment of punitive damages against Riss deemed to be proper by the district court, with costs and interest as provided in and accruing from the entry of the original judgment, then the judgment as so modified shall be final; otherwise, if plaintiffs do not accept the reduction in the compensatory damage judgment to $29,000 and the reduction, if any, in the punitive damage judgment deemed to be proper by the district court, an order shall be entered granting a new trial on the compensatory and punitive damages on the fraud claim against defendant Riss.[25]

**IT IS SO ORDERED.**

---

24. Plaintiffs in their appellate briefs attempt to inject bailment theories into their warranty and conversion arguments. *See* Brief of Appellees 45–47. We need not consider these arguments because they were not made in the trial court.

Defendants complain that "plaintiffs are attempting to have their cake in the form of cancelling and avoiding all obligations to pay and to perform on their part pursuant to the [c]artage [c]ontract and the [l]ease[-purchase agreements], but are also attempting to eat their cake in the form of a gigantic jury verdict." Reply Brief of Appellants 1; *see also* Brief of Appellants 39–41. Defendants rely on several Kansas cases for the proposition that a party cannot seek both rescission of a contract and damages under the benefit of the bargain theory for fraudulent misrepresentations in inducing the party to enter into the contract. This argument is unpersuasive for several reasons. First, defendants raise this issue for the first time on appeal. Second, plaintiffs in this action did not seek rescission of the cartage contract and the lease-purchase agreements, and plaintiffs re-

main liable on their obligations under these agreements which had accrued before repossession. Third, the jury returned a verdict for plaintiffs on defendant World Leasing's counterclaim for breach of the lease-purchase agreements, and World Leasing does not challenge this finding on appeal.

25. *See* 28 U.S.C. § 2106; *cf. Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036, 1047 (5th Cir.1984) ("[W]hen an appellate court has determined that a remittitur of a substantial portion of the actual damages found by a jury is required, it must then also give consideration to the ratio between actual and punitive damages as established by the jury."), *cert. denied,* —— U.S. ——, 105 S.Ct. 1749, 105 S.Ct. 1750, 84 L.Ed.2d 814 (1985); *Natco, Inc. v. Williams Brothers Engineering Co.*, 489 F.2d 639, (5th Cir.1974) (district court directed to order remittitur of actual damages and proportionate remittitur of punitive damages).